1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3    UNITED STATES OF AMERICA,

4           Plaintiff,

5           v.                                           Civil No. 06-1960 (JAF)

6    ONE RURAL LOT IDENTIFIED AS FINCA
7    NO. 5991 LOCATED IN BARRIO PUEBLO,
8    PUERTO RICO, et al.,

9           Defendants.
10   --------------------------------------------------------

11   UNITED STATES OF AMERICA,
12
13          Plaintiff,
                                                         Criminal No. 03-361 (JAF)
14          v.

15   AURELIANO GIRAUD-PIÑERO, et al.,

16          Defendants.

17                      **OPINION AND ORDER**

18          Petitioner Wal-Mart de Puerto Rico, Inc. brings this challenge against the forfeiture of

19   certain real property under a judgment of this court.  (Civil No. 06-1960, Docket No. 319; see

20   Civil No. 06-1960, Docket No. 312; Criminal No. 03-361, Docket No. 1139.)  Construing

21   Petitioner's request as a petition for a post-criminal forfeiture hearing without jury under 21

22   U.S.C. § 853(n)(2), we ordered Petitioner and the United States to appear before this court.

Civil No. 06-1960 (JAF)/Criminal No. 03-361 (JAF)                                          -2-

1    (Civil No. 06-1960, Docket No. 346.)  Having heard their respective arguments, we decide in

2    favor of Petitioner for the reasons stated below.

3                                                          **I.**

4                                          **Factual and Procedural Synopsis**

5              On  December  16,  2003,  the  United  States  indicted  Aureliano  Giraud-Piñero

6    ("Aureliano"), Elliot Giraud-Piñero ("Elliot"), and seventeen co-defendants for their respective

7    roles in a criminal narcotics and money-laundering organization.  (Criminal No. 03-361, Docket

8    No. 2.)  On August 23, 2004, Elliot pleaded guilty to witness tampering and money laundering,

9    and he agreed to the forfeiture of property involved in the money laundering.  (Criminal No. 03-

10   361,  Docket  No. 413.)   In  his  plea  agreement,  Elliot  stipulated  that  he  participated  in  a

11   conspiracy to import and distribute narcotics in Puerto Rico from 1991 until the end of 2002.

12   (Criminal No. 03-361, Docket No. 522.)  Elliot stated that he concealed the proceeds of these

13   offenses and that others assisted him in this concealment.  (Id.)

14             With Elliot's plea agreement and an affidavit by an agent of the Drug Enforcement

15   Administration, the United States instituted parallel civil proceedings in rem to forfeit forty-six

16   parcels of real property in Puerto Rico as traceable proceeds of money laundering.[1]  (Civil

17   No. 06-1960, Docket No. 1.)  The properties listed in the affidavit include a certain parcel in

---

[1] We note that counsel for the United States cited the wrong statute for civil forfeiture of proceeds of money laundering and erroneously appended counts for criminal forfeiture in personam to a civil complaint in rem.  (See Civil No. 06-1960, Docket No. 1.)  As we have stated before, the generous notice pleading standard under Federal Rule of Procedure 8 is no substitute for diligent lawyering.

1    Hatillo, Puerto Rico, known as Finca No. 5500.  (Id.)  On June 4, 2008, the United States

2    proposed settlement of outstanding claims by claimants with alleged interests in these

3    properties.  (Civil No. 06-1960, Docket No. 161.)

4            Although Petitioner was aware of these proceedings and informed the United States that

5    it had leasehold interests in Finca No. 5500, Petitioner did not intervene in the civil case as a

6    claimant.  (See Civil No. 06-1960, Docket No. 337-3.)  The United States acknowledges that

7    third parties informed it of the existence of a lease.  (Civil No. 06-1960, Docket No. 335.)

8            Pursuant to an unrecorded lease concluded on June 5, 2003, with Northland International,

9    Inc. ("Northland") (Civil No. 06-1960, Docket No. 333-2), the landowner of record for Finca

10   No. 5500 (see Civil No. 06-1960, Docket No. 312), Petitioner operates an Amigo supermarket

11   on that commercial site.  The contract granted Petitioner ownership rights in the building, which

12   Petitioner constructed, for the duration of the fifteen-year lease.  (See Civil No. 06-1960, Docket

13   No. 333-2 at ¶ 6.)  The lease could be extended at Petitioner's option for four five-year terms.

14   (Id. at ¶ 2.)

15          On September 23, 2009, Aureliano pleaded guilty in the criminal case to conspiracy to

16   commit narcotics offenses and conspiracy to commit money laundering.  (Criminal No. 03-361,

17   Docket No. 1115).  In his plea agreement, Aureliano represented that he was aware of the

18   accompanying civil forfeiture proceedings against the real properties and that he would not

19   contest the judgment in that case.  (Criminal No. 03-361, Docket No. 1113.)  Aureliano

20   stipulated that he participated in a conspiracy to import and distribute drugs from 1991 until the

Civil No. 06-1960 (JAF)/Criminal No. 03-361 (JAF)                    -4-

1    end of 2002.  (Id.)  During that period of time, he participated in a conspiracy to commit money

2    laundering by using the proceeds from illegal narcotics activities to purchase real estate and

3    other property and to finance legitimate businesses held in his and others' names.  (Id.)

4           On December 3, 2009, the United States concluded a settlement agreement with Banco

5    Santander Puerto Rico ("BSPR"), a claimant in the civil case with alleged mortgage liens

6    against Finca No. 5500.  (Civil No. 06-1960, Docket No. 309.)  Under this agreement, the

7    United States promised to pay BSPR an amount equal to the unpaid principal due on a certain

8    loan executed by Aureliano and Elliot in 1998 that listed Finca No. 5500 as collateral.  (Docket

9    Nos. 309; 309-2.)  This payment is contingent upon the entry of a final order of forfeiture and

10    the sale of the realty.  (Docket No. 309.)  To secure this payment, Aureliano and Northland

11    pledged five mortgage notes to BSPR.  (Id.)  Upon receiving the agreed sum from the United

12    States, BSPR must relinquish all claims relating to Finca No. 5500 and convey all of its security

13    interests in said property to the United States.  (Id.)

14           On December 15, 2009, we issued a final order of forfeiture as to Finca No. 5500

15    simultaneously in both the civil and criminal cases.  (Civil No. 06-1960, Docket No. 312;

16    Criminal No. 03-361, Docket No. 1140.)  We found that the property was subject to both civil

17    forfeiture as property constituting or traceable to proceeds of money laundering under 18 U.S.C.

1    § 981(a)(1)(B) and as traceable proceeds of narcotics offenses under 21 U.S.C. § 881(a)(6), and

2    criminal forfeiture under 21 U.S.C. § 853.[2]  (See id.)

3              On December 30, Petitioner challenged the forfeiture order, requesting a hearing to

4    adjudicate its property interests in Finca No. 5500.  (Civil No. 06-1960, Docket No. 319.)  The

5    United States opposed (Civil No. 06-1960, Docket No. 324), and Petitioner replied.  (Civil

6    No. 06-1960, Docket No. 331.)  Construing Petitioner's motion as a petition for post-forfeiture

7    relief under 21 U.S.C. § 853(n),[3] we noted that Petitioner had an alleged leasehold interest in

8    the realty and ordered the United States to address this issue.  (Civil No. 06-1960, Docket

9    No. 334.)  The United States submitted a responsive brief.  (Civil No. 06-1960, Docket

10   No. 335.)

11             On March 4, 2010, we found that Petitioner stated colorable grounds for relief, holding

12   that Puerto Rico law permits an unrecorded lease to operate against third parties who are aware

---

[2] The United States filed this forfeiture order with the Puerto Rico Registrar of Property in Arecibo on January 5, 2010, and is awaiting final registration.  (Civil No. 06-1960, Docket No. 335.)

[3] Although the United States concedes the propriety of resolving this petition under criminal post-forfeiture proceedings (see Civil No. 06-1960, Docket No. 324), we nevertheless note an imprecision on its part. For Finca No. 5500 to be subject to criminal forfeiture, the forfeiture must follow a criminal conviction as part of the sentence imposed against the convict.  See United States v. Rogers, 102 F.3d 641, 647-48 (1st Cir. 1996). The district court may only render a sentence after hearing the defendant's arguments.  See 18 U.S.C. § 3553.

In the present criminal case, we convicted Elliot of both drug crimes and money laundering (Criminal No. 03-361, Docket No. 1173), which can support criminal forfeiture.  See 18 U.S.C. § 982; 21 U.S.C. § 853. However, we did not order the forfeiture of Finca No. 5500 as part of his sentence because the property was not listed in the amended bill of particulars.  (Criminal No. 03-361, Docket Nos. 202; 522.)  Criminal forfeiture of that parcel must depend instead on Aureliano's conviction for drug crimes and money laundering (Criminal No. 03-361, Docket No. 1116), but he has yet to be sentenced.  By simultaneously pursuing final orders of forfeiture in both the civil and criminal cases, the United States caused Aureliano to be sentenced without a hearing and furnished grounds for the instant petition by Petitioner.

Civil No. 06-1960 (JAF)/Criminal No. 03-361 (JAF)                                    -6-

1    of the existence of the lease.  (Civil No. 06-1960, Docket No. 339.)  We ordered the United

2    States to explain why we should not amend our forfeiture order to require the United States to

3    take Finca No. 5500 subject to Petitioner's lease.  (Id.)  The United States responded (Civil

4    No. 06-1960, Docket No. 340), and Petitioner replied (Civil No. 06-1960, Docket No. 341).

5    Noting an impasse between the United States and Petitioner, we ordered them to appear before

6    this court for a § 853(n) hearing.  (Civil No. 06-1960, Docket No. 346.)  The United States

7    submitted a final brief challenging Petitioner's standing.  (Civil No. 06-1960, Docket No. 352.)

8             Meanwhile, Caribbean City Builders, Inc. ("CCBI") appeared in the civil case, informing

9    the court that BSPR had assigned its collection rights under the settlement agreement to CCBI

10   on December 3, 2009, the same day that the agreement was concluded.  (Civil No. 06-1960,

11   Docket No. 315.)  On March 4, 2010, we found that CCBI lacks standing to challenge

12   Petitioner's petition because the forfeiture on its face extinguishes BSPR's and, hence, CCBI's

13   claims against Finca No. 5500.  (Civil No. 06-1960, Docket No. 339.)  Accordingly, CCBI

14   cannot plausibly suffer harm from our adjudication of Petitioner's claim.  (See id.) On May 12,

15   CCBI attempted again to interpose its arguments against recognition of Petitioner's lease,

16   contending that recognition would prejudice CCBI's security interests in Finca No. 5500. (Civil

17   No. 06-1960, Docket No. 348.)

Civil No. 06-1960 (JAF)/Criminal No. 03-361 (JAF)                                        -7-

On May 26, the United States and Petitioner appeared before us in open court to present their respective positions.[4]  (See Civil No. 06-1960, Docket No. 353.)  With the benefit of their arguments, we now adjudicate Petitioner's request for modification of our final order of forfeiture as to Finca No. 5500.

## II.

## Contestation of Criminal Forfeiture Under § 853(n)

After the entry of an order of criminal forfeiture against a defendant in a criminal case, third-party claimants may request an ancillary hearing under 21 U.S.C. § 853(n)(2) to challenge the forfeiture.  United States v. Cunan, 156 F.3d 110, 116 n.7 (1st Cir. 1998).  Claimants must prove by a preponderance of the evidence that their interests in the property vested was superior to that of the defendant at the time of the commission of the underlying crime, or that the claimants were bona-fide purchasers for value without reason to know that the property was forfeitable.  Id.; see § 853(n)(6); see also United States v. Real Property in Waterboro, 64 F.3d 752, 756 (1st Cir. 1995) (interpreting § 853(n)(6)(A)).  If the court finds any of these three grounds for relief, "the court shall amend the order of forfeiture in accordance with its determination."  § 853(n)(6).

---

[4] At the May 26 hearing (Civil No. 06-1960, Docket No. 353), we ascertained that Petitioner and the United States agree on the essential facts in this case, namely that Petitioner has an unrecorded lease; Petitioner was unaware that Northland's ownership of Finca No. 5500 was suspect; and the United States has been aware of the lease for some time.  Maintaining that it is entitled to remain on the land for the duration of the lease or that the United States must compensate Petitioner in the alternative, Petitioner expresses its willingness to reimburse the United States for the cost of recording the lease in the property registry.  In response, the United States asserts its willingness to accommodate Petitioner's tenancy while Finca No. 5500 remains in the United States' possession, but refuses to protect the lease against subsequent purchasers.

Civil No. 06-1960 (JAF)/Criminal No. 03-361 (JAF)                                    -8-

1        This hearing provides the sole means by which third-party claimants may challenge the

2   validity of the forfeiture.  United States v. McHan, 345 F.3d 262, 269 (4th Cir. 2003); see also

3   § 853(k) (barring third-party challenges to forfeiture via intervention or parallel case).  The

4   hearing is a juryless trial in equity to adjudicate claimants' interests in forfeited properties.

5   McHan, 345 F.3d at 275-76.  Accordingly, the proceedings are civil rather than criminal.

6   United States v. Lavin, 942 F.2d 177, 182 (3d Cir. 1991).

7                                              **III.**

8                                          **Analysis**

9        Petitioner attacks our forfeiture order, contending that we must recognize its interests in

10  Finca No. 5500 pursuant to its unrecorded lease.  In response, the United States maintains that

11  the unrecorded lease cannot sustain Petitioner's claim, and that Petitioner lacks standing as an

12  unsecured claimant to challenge the criminal forfeiture under § 853.  We first address these

13  arguments in relation to the availability of relief under § 853(n) before determining the

14  appropriate remedy and considering CCBI's petition to intervene.

15  **A.      Relief Under § 853(n)(6)**

16       Criminal forfeiture under § 853 relies on a powerful "relation-back doctrine," under

17  which "[a]ll right, title, and interest in property . . . vests in the United States upon the

18  commission of the act giving rise to forfeiture under this section," § 853(c).  Despite this broad

19  authorization of forfeiture, the statute affords relief for certain third parties who were not

20  involved in the criminal conduct.  See § 853(n).

1    The text of § 853(n) does not specify whether federal or state law controls.  See 21

2    U.S.C. § 853(n).  While there is no precedent in the First Circuit addressing this ambiguity, the

3    Ninth Circuit has held, "In drug forfeiture actions, ownership of property is determined by state

4    law."  United States v. Lester, 85 F.3d 1409, 1412 (9th Cir. 1996) (quoting United States v.

5    Ranch Located in Young, Ariz., 50 F.3d 630, 632 (9th Cir. 1995)).

6            Even where state law recognizes a claimant's property interest, § 853(n) grants relief in

7    only three situations.  See § 853(n)(6).  The first is where a claimant's "right, title, or interest

8    was vested in the petitioner rather than the defendant . . . at the time of the commission of the

9    acts which gave rise to the forfeiture."  § 853(n)(6)(A).  The second possibility is where such

10   right, title, or interest "was superior to any right, title, or interest of the defendant" at the time

11   of the commission of the crime.  Id.  Third, the statute permits relief where "the petitioner is a

12   bona fide purchaser for value of the right, title, or interest in the property and was at the time

13   of purchase reasonably without cause to believe that the property was subject to forfeiture under

14   this section."  § 853(n)(6)(B).

15           If claimants' interests fall outside these exceptions, they have no recourse to federal

16   courts.  For instance, if claimants' claims do not attach to any specific item of property, they

17   may lack standing as general creditors to challenge the forfeiture under § 853(n).  See United

18   States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions

19   Lottery Ticket No. M246233, 326 F.3d 36, 44 (1st Cir. 2003) (citing precedents under § 853 in

1    context of civil forfeiture).  Such claimants may only seek discretionary relief from the U.S.

2    Attorney General.  <u>See</u> § 853(i); <u>Lavin</u>, 942 F.2d at 185.

3          The First Circuit has not definitively ruled on the proper construction of § 853(n)(6).

4    The Fourth Circuit, however, has held that courts should construe the statute so as to avoid

5    unconstitutional deprivation of property rights without due process, because claimants are not

6    parties to the criminal prosecution of the defendant.  <u>United States v. Reckmeyer</u>, 836 F.2d 200,

7    206-07 (4th Cir. 1987).  With this rule of construction in mind, we proceed to examine the

8    availability of relief for Petitioner under § 853(n)(6).

9        **1.**    **<u>Unrecorded Lease and Standing Under § 853(n)</u>**

10         The United States questions Petitioner's standing as a general creditor under § 853(n).

11    (<u>See</u> Civil No. 06-1960, Docket No. 352.)  For a claimant to have standing, he cannot be the

12    defendant in the principal criminal case, and he must have "a legal interest in property which

13    has been ordered forfeited to the United States."  § 853(n)(2).

14         Petitioner is not a typical unsecured claimant who seeks to recover a liquidated amount

15    as compensation.[5]  <u>See Reckmeyer</u>, 836 F.2d at 205; <u>cf.</u> <u>One-Sixth Share</u>, 326 F.3d at 44

---

[5] First Circuit case law suggests that even general creditors may have standing in special situations. <u>United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233</u>, 326 F.3d 36, 44 (1st Cir. 2003); <u>see United States v. Campos</u>, 859 F.2d 1233, 1237-38 (6th Cir. 1988).  In <u>Reckmeyer</u>, the Fourth Circuit held that general creditors have standing under § 853(n) when the forfeiture reaches all of a defendant's assets, such that an unsecured claimant must perforce satisfy his judgment out of the seized properties.  <u>United States v. Reckmeyer</u>, 836 F.2d 200, 205 (4th Cir. 1987).  While citing <u>Reckmeyer</u> as an exceptional case, the First Circuit left open the possibility that "this rule about general [creditors' standing] may . . . be relaxed in unusual circumstances." <u>One-Sixth Share</u>, 326 F.3d at 44.

The case before us presents such an extraordinary situation.  If lessees generally lack standing because their interests constitute unsecured debts, § 853 would effectively dispossess innocent tenants without an

1    (classifying money judgment as "only a general in personam judgment [against a defendant],

2    not a secured interest against any particular asset that he owned").  Rather, Petitioner claims

3    interests under a lease of specific real property.

4         Under the civil law, persons may lease either their things, their labor or their services.

5    31 L.P.R.A. § 4011 (1990).  Contracts for leases of realty are a form of personal obligation,

6    unlike real rights of estate at common law.[6]  See 31 L.P.R.A. §§ 4031-4071 (1990); Atocha

7    Thom McAn, Inc. v. Registrar, 23 P.R. Offic. Trans. 497 (1989) (noting that Puerto Rico law

8    permits recordation of leases "even though it is not a real right"); see also P.R. Civ. Code arts.

9    1432–1472 (1930) (classifying leases as obligations under Book IV, distinct from rights to

10   property under Book II).

11        Although lessees have no rights in the land per se, the Puerto Rico recordation statute

12   protects lessees whose rights are entered into the property registry.  See 30 L.P.R.A. § 2201

13   (2005).  This registration declares the lessee's right to the public at large and creates an erga

---

opportunity to be heard, an abhorrent result rejected under Reckmeyer.  See 836 F.2d at 206-07.

        Although the U.S. Attorney General has authority to grant remissions from forfeitures, see 21 U.S.C. § 853(i), this discretionary remedy is no substitute for our judicial review of seizures.  Because claimants in criminal forfeitures cannot otherwise seek redress in court, the denial of standing to lessees would essentially violate the separation-of-powers doctrine by committing the review of these evictions to an executive agency. See The Federalist No. 48 (James Madison) (commenting on the necessity of separation of powers between branches of government to preserve liberty); see also Slocum v. Mayberry, 15 U.S. 1, 9-10 (2 Wheat. 1) (1817) (Marshall, C.J.) (holding that federal district courts have judicial power in equity to entertain challenges to legality of forfeiture in absence of statutory authority).  Therefore, the principles of procedural due process and the separation of powers both militate in favor of standing for lessees facing ouster by forfeiture.

        [6] Louisiana historically treated leases under analogous civil-law provisions as "contracts establishing personal rights and obligations."  Richard v. Hall, 874 So. 2d 131, 145 (La. 2004) (citing 2 A.N. Yiannopoulos, Louisiana Civil Law Treatise § 226 (4th ed. 2001)); Yiannopoulos, supra, § 226 (noting that leases create personal "rights and obligations ad rem rather than in re").

1    omnes obligation to respect such right.  Atocha Thom McAn, 23 P.R. Offic. Trans. 497; see

2    Garage Cooperativo de Sabana Grande v. Arco Caribbean, Inc., 11 P.R. Offic. Trans. 70 (1981)

3    (holding that recordation transforms lessee's rights into real rights); Luis Rafael Rivera-Rivera,

4    Derecho Registral Inmobilario Puertorriqueño 51-53 (2002).  If, on the other hand, the parties

5    fail to record the lease, such lease would generally have no effect against third persons, and the

6    recordation statute becomes a shield for non-parties to the lease.  See 31 L.P.R.A. § 4034.

7          Nevertheless, we previously found a basis for recognizing unrecorded leases.  (Civil

8    No. 06-1960, Docket No. 339.)  Like the registration rule for leases, unrecorded rights in realty

9    generally have no effect against third persons.  See 31 L.P.R.A. § 1872 (1993).  Unlike other

10   civil-law jurisdictions, Puerto Rico holds that persons with notice of unrecorded real rights

11   cannot seek protection as third persons.  Banco de Santander de P.R. v. Rosario-Cirino, 126 P.R.

12   Dec. 591, 604-07 (1990);[7] Pascual v. Fernández-Sierra, 8 P.R. Offic. Trans. 447, 455-56 (1979).

13   Puerto Rico imposes due diligence as a requirement of good faith, such that the law denies

14   protection to a person who either knows of a competing claimant to the land or fails to

15   reasonably inspect the premises.  See Rosario-Cirino, 126 P.R. Dec. at 605-06; see also 30

16   L.P.R.A. § 2355 ("The good faith of a third party shall always be presumed unless there is proof

17   that the inaccuracy of the Registry was known when the property was acquired.").

18         With respect to leases, the purpose of recordation is the absolute protection of lessees

19   from eviction by public declaration of their rights.  See Garage Cooperativo, 11 P.R. Offic.

_____

[7] For English translation, see Appendix I to this Opinion and Order.

Civil No. 06-1960 (JAF)/Criminal No. 03-361 (JAF)                    -13-

1    Trans. 70.  This promotion of legal certainty and the background requirement of good faith

2    under the property registry, see 30 L.P.R.A. § 2355, are best served by symmetrical treatment

3    of a third party's actual notice of real rights and lease rights.  We, therefore, hold that the

4    aforementioned diligence rule applies not only to the registration of real rights, see 31 L.P.R.A.

5    § 1872, but also to the protection of third persons from unrecorded leases, see id. § 4034.

6        In the instant case, Petitioner's lease is not recorded in the property registry.

7    Nevertheless, the evidence unequivocally demonstrates the United States' awareness of a

8    commercial lessee occupying Finca No. 5500 prior to forfeiture.  (See Civil No. 06-1960,

9    Docket Nos. 335; 337-3.)  We, thus, find that Puerto Rico law does not permit the United States

10   to dislodge Petitioner as a tenant, and that Petitioner has standing by virtue of its "interest in

11   property" under the lease contract.  See 21 U.S.C. § 853(n)(2).

12       **2.    Lessee as "Bona Fide Purchaser for Value"**

13       Having found that Petitioner has standing to raise the instant challenge, the pertinent

14   question is whether § 853(n)(6) protects Petitioner's tenancy.

15       Because Petitioner's lease from 2003 postdates Aureliano's criminal conduct from 1991

16   to 2002, Petitioner cannot seek relief on the basis of vested rights or superior rights in Finca

17   No. 5500.  See 21 U.S.C. § 853(n)(6)(A).  We, thus, need not consider whether Petitioner's

18   lease fits into either of these two categories.[8]

_____

[8] The protection for "superior" interests cannot apply.  See 21 U.S.C. § 853(n)(6)(A).  "Such a superior interest would clearly be one in the nature of a lien, mortgage, recorded security device, constructive trust, valid assignment, or the like."  Campos, 859 F.2d at 1238-39 (emphasis in original).  Petitioner is a tenant under a

Civil No. 06-1960 (JAF)/Criminal No. 03-361 (JAF)                                    -14-

1          Only one possible avenue remains—the claimant's status as a "bona fide purchaser for

2    value."  See § 853(n)(6)(B).  To assess the applicability of this provision, we first consider the

3    definition of a bona-fide acquirer under Puerto Rico law before turning to federal precedents.

4          While the civil law expressly protects bona-fide acquirers of chattels (movable property),

5    31 L.P.R.A. § 1479, the best approximation for acquirers of real rights is the protection afforded

6    to third persons who are unaware of defects in the property registry, see id. § 1872, and those

7    who are unaware of unrecorded leases, see id. § 4034.  Petitioner cannot assert its status as a

8    bona-fide acquirer under these provisions, however, because only subsequent purchasers of the

9    land may claim protection as third persons, not existing tenants.[9]

10         We next look to federal case law to determine whether § 853(n)(6)(B) may, nonetheless,

11   protect tenants.  At common law, a person is not a "bona fide purchaser for value" unless he

_____

lease, not a creditor with a security interest attached to the land.

          [9] Petitioner also urges this court to recognize either its ownership rights in the building under a theory
of "surface rights" or its right to compensation as a "builder in good faith."  Neither principle obtains.
          Under Puerto Rico law, builders can assert surface rights in buildings they construct upon the land,
which they may record in the property registry.  Lozada-Ocasio v. Registrar, 99 P.R. 423, 436-37 (1970).  With
respect to this theory, however, the United States is protected as a third person, see 31 L.P.R.A. § 1872, because
no reasonably diligent person could have discovered Petitioner's alleged rights, which were memorialized in
a private contract only (Civil No. 06-1960, Dockets Nos. 319; 333-2).  See Banco Santander de P.R. v. Rosario-
Cirino, 126 P.R. Dec. 591, 604-07 (1990).  Unlike the physical presence of a tenant upon the land which signals
the existence of a lease, the United States could not have known that Petitioner's unrecorded lease also granted
ownership in the commercial building for the duration of the lease.  Accordingly, this right is not enforceable
against the United States.
          Even if proven, Petitioner's status as a "builder in good faith" cannot establish its purchase of rights for
value.  This civil-law doctrine protects persons who construct improvements upon the land in good faith by
requiring the landowner to compensate the builder.  31 L.P.R.A. §§ 1164-1165.  This right to compensation is
not tantamount to recognition of the builder's rights in the land; rather, it is the builder's remedy for unjust
enrichment.  See Municipality of Cayey v. Soto-Santiago, 131 P.R. Dec. 304 (1992), available at
http://www.westlaw.com (enter "1992 P.R.-Eng. 754,881" in box for "Find by citation") (English translation).

1    acquires title ownership of the purchased property.  See, e.g., Rhône-Poulenc Agro, S.A. v.

2    DeKalb Genetics Corp., 284 F.3d 1323, 1329 (Fed. Cir. 2002).  If this definition were to strictly

3    apply, however, lessees would be unable to seek relief under § 853(n)(6)(B).

4            Lessees in Puerto Rico have contractual lease rights relating to real property, see supra

5    part III.A.1, and procedural due process protects contractual rights in the same way it defends

6    tangible property against arbitrary state encroachment.  See Lynch v. United States, 292 U.S.

7    571, 579 (1934); P.R. Tel. Co. v. Telecomms. Regulatory Bd., 189 F.3d 1, 17-18 (1st Cir. 1999)

8    (commenting that contractual rights grounded in state or federal law could constitute property

9    for purposes of procedural due process).  Although Puerto Rico law requires landowners—in

10   this case Northland—to compensate ousted lessees following the sale of the land, see 31

11   L.P.R.A. § 4068, this remedy cannot redress the unconstitutional deprivation of tenants' rights

12   by federal officials.  If § 853(n)(6)(B) affords no relief to lessees, Petitioner would have

13   essentially no opportunity to judicially vindicate its rights.  Like the situation encountered by

14   the Fourth Circuit in Reckmeyer, this potential result gives us pause.  See 836 F.2d at 206-07

15   (observing that lack of remedy under § 853(n) would raise "[s]erious due process questions" as

16   it would effectively bar third parties from challenging validity of forfeiture).

17          To avoid such constitutional defect, Reckmeyer interpreted § 853(n)(6)(B) as

18   "Congress's attempt to define 'arms'-length' transactions."  Id. at 208.  "Although it speaks in

19   terms of a 'bona fide purchaser for value,' it is obvious from Congress's goal in enacting this

20   provision that it did not mean the term 'purchaser' to operate as a limitation on the class of those

Civil No. 06-1960 (JAF)/Criminal No. 03-361 (JAF)                                          -16-

1    who having engaged in arms'-length transactions with the defendant were entitled to protection

2    of their interests." Id. (emphasis in original). Reckmeyer concluded that Congress meant for

3    § 853(n)(6)(B) to serve as a catch-all exception for innocent claimants, irrespective of the time

4    of the exchange in relation to the defendant's crime. Id. Accordingly, the Fourth Circuit held

5    that "the term 'bona fide purchaser for value' must be construed liberally to include all persons

6    who give value to the defendant in an arms'-length transaction with the expectation that they

7    would receive equivalent value in return."[10] Id.

8          Adopting the Reckmeyer court's logic, we hold that § 853(n)(6)(B) affords a remedy to

9    innocent lessees in Puerto Rico who were unaware of the property's forfeitability at the time of

10   contracting. See id. at 208. Assuming that the tenant observes all requirements for valid leases

11   under the civil law, he pays an agreed price in return for the right to use the leased realty under

12   a contract. See 31 L.P.R.A. § 4012. This exchange constitutes a transaction for equivalent

13   value in return. See Reckmeyer, 836 F.2d at 208. However, the lessee must demonstrate his

14   good faith—in that he neither knew nor had reason to believe that the property he occupied

15   constituted either the instrument of, or the proceeds of, drug-trafficking or money laundering.

16   See 21 U.S.C. § 853(n)(6)(B).

---

[10] Likewise, the Sixth Circuit in Campos opined that § 853(n)(6)(B) may include non-titleholders such as assignees, trust beneficiaries, spouses, and lienholders. See 859 F.2d at 1237-38. However, the Sixth Circuit decided against enlarging the meaning of "bona fide purchasers" under § 853(n)(6)(B) in that case. See id. at 1238 (declining to adopt idiosyncratic meaning for bona fide purchasers). We find that Campos is distinguishable. The claimants in Campos did not argue that the assets were not forfeitable. Id. at 1237. Accordingly, the Sixth Circuit had no occasion to interpret § 853(n)(6)(B) so as to give claimants standing to challenge the applicability of the forfeiture statute. See id. In the instant case, Petitioner has consistently argued that its rights are not forfeitable to the United States.

1          Applying this rule to our case, the parties agree that Petitioner formed a lease with

2    Northland in 2003.  There is no indication, and the United States does not contend, that

3    Petitioner should have believed that Northland was a front company for a criminal organization

4    engaged in drug-trafficking and money laundering when the lease was formed.  Under the lease,

5    Petitioner undertook to pay a certain amount in rent, which represents the agreed value of

6    Petitioner's interest in the use and enjoyment of Finca No. 5500 as a commercial property.  (See

7    Civil No. 06-1960, Docket No. 333-2.)  We, therefore, find that Petitioner is entitled to

8    amendment of our final order of forfeiture of December 15, 2009 (Civil No. 06-1960, Docket

9    No. 312; Criminal No. 03-361, Docket No. 1140), to protect its interests in the lease.

10         Our solution comports with the rule of construction in § 853:  "The provisions of this

11   section shall be liberally construed to effectuate its remedial purposes," 21 U.S.C. § 853(o).  By

12   remedial, we understand Congress to mean the equities of each case, balancing the United

13   States' interest in forfeiting the instruments and proceeds of federal crimes against the justice

14   of dispossessing occupants of forfeitable property.  Accord Campos, 859 F.2d at 1241 (Jones,

15   J., dissenting); see Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 629-30 (1989)

16   (construing § 853(n)(6)(A) to include return of property to rightful owners as part of

17   governmental interests in forfeiture); see also Black's Law Dictionary 1407 (9th ed. 2009)

18   (defining remedial as, inter alia, "[i]ntended to correct, remove, or lessen a wrong, fault, or

defect").  The preservation of an innocent tenant in his lease is a just application of the statute

that causes minimal burden to the United States, which will likely sell the forfeited land.[11]

**B.    Remedy**

Having decided that § 853(n)(6)(B) affords both standing and relief to Petitioner, we

must still determine the appropriate remedy in this case.  Petitioner seeks to remain as a tenant

on Finca No. 5500 and is willing to pay for the costs of recording its private lease contract with

Northland in the property registry.  (Civil No. 06-1960, Docket No. 353.)  However, the United

States stubbornly refuses to afford protection for Petitioner's lease after the United States sells

the land.  (See id.)  Alternatively, Petitioner seeks compensation from the United States in the

event of its ouster from the premises.  (See id.)  Because proceedings under § 853(n) are in

equity, McHan, 345 F.3d at 275-76, we are essentially confronted with a choice between

mandating specific performance on the lease contract, albeit with a substitution of the lessor-

landowner, and ordering restitution.

---

[11] In upholding a Puerto Rico forfeiture statute, the U.S. Supreme Court commented that a broad forfeiture statute could "give rise to serious constitutional questions." Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 688-89 (1974). "[A] forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed." Id. at 689 (quoting Peisch v. Ware, 8 U.S. 347, 363 (4 Cranch 347) (1808)).  Forfeiture may be problematic where an owner proves "that he was uninvolved in and unaware of the wrongful activity, [and] that he had done all that reasonably could be expected to prevent the proscribed use of his property." Id.  In the instant case, Petitioner is a tenant who leased the property in good faith from Northland.  The United States has not proved, and there is no indication, that Petitioner should have suspected Northland of wrongful activity.  Even if the property constituted proceeds of illegal activity as the United States alleged, there was no opportunity for a reasonably diligent person to discover this fact by inspecting the premises and the property registry.  Accordingly, our construction of § 853(n)(6)(B) complies with the Court's admonition against "unduly oppressive" forfeitures. See id. at 690.

1    Discussing the propriety of injunctive relief with respect to a commercial lease, Judge

2    Richard Posner of the Seventh Circuit amply set forth the complexities of fashioning an

3    equitable remedy.  Walgreen Co. v. Sara Creek Prop. Co., 966 F.2d 273-74 (7th Cir. 1992)

4    (describing benefits and costs of injunctive relief where commercial anchor tenant sought

5    injunction to compel landlord's compliance with lease).  In assessing whether the plaintiff had

6    an adequate remedy at law, the learned judge noted that injunctions are preferred over damages,

7    because an injunction "shifts the burden of determining the cost of the defendant's conduct from

8    the court to the parties," and because the free market determines prices more accurately than

9    "[a] battle of experts" convened under governmental authority.  Id. at 275-76.

10    However, an injunction also forces the litigants into a "bilateral monopoly" in which they

11    must negotiate with one another, creating a "bargaining range" between the price demanded by

12    the winner-seller of the injunctive right and the price that the loser-buyer is willing to pay for

13    the right.  Id. at 276.  Where this difference between prices is high, the parties are unlikely to

14    reach a compromise without great difficulty, as each side stands to lose a substantial amount by

15    settlement.  Id. at 278 (citing Boomer v. Atl. Cement Co., 26 N.E.2d 870 (1970)).  Under such

16    circumstances, the court should assess damages and order compensation rather than impose an

17    injunction, because the costs of an injunction would far outweigh its value.  See id.

18    First, we heed Judge Posner's admonition against unnecessary inquiries into a fair rental

19    price when we can simply shift that burden to a future landlord and Petitioner.  See id. at 275-

20    76.  At the hearing, counsel for the United States argued against recording the lease, contending

1    that a registered lease would foreclose subsequent negotiations between a subsequent buyer and

2    Petitioner that would result in a better rental price for the buyer.  Setting aside the question of

3    the United States' standing to argue on behalf of a hypothetical future buyer, Judge Posner's

4    able analysis disposes of this argument.  See id. at 278.  If we order the United States to adopt

5    and record Petitioner's lease, the buyer of the property in a government auction must decide

6    whether to retain Petitioner as the anchor tenant on a commercial site.  Because Petitioner's

7    lease would be protected against third persons, see 31 L.P.R.A. § 1872, the future landowner

8    must negotiate with Petitioner to terminate the lease.

9           In effect, the United States urges this court to adopt a rule opposite to that expounded by

10   Judge Posner.  See Walgreen Co., 966 F.2d at 275-76, 278.  If we refuse to grant protection to

11   Petitioner, it must negotiate with a future buyer to purchase the right to remain on the premises.

12   Setting aside the inherent injustice in effectively ousting a tenant from an otherwise valid lease,

13   such a rule would be unnecessarily disruptive to existing economic arrangements.  While the

14   parties may eventually arrive at the same rental price, the commercial tenant and its employees

15   would be left in limbo while awaiting the result of such negotiations.  We observe that the

16   national economy remains weak, and the economy in Puerto Rico contracted by four percent in

17   2009, continuing a local decline that has recently accelerated.[12]  Given the current economic

18   crisis, coupled with the prevalence of drug-related forfeitures in Puerto Rico, the United States'

_____

[12] The World Factbook, http://www.cia.gov/library/publications/the-world-factbook/geos/rq.html (last accessed on June 23, 2010) (see Appendix II).

1    alternate rule would have broad repercussions by imposing undue burden on not just Petitioner,

2    but also on similarly-situated lessees and their workers.

3           Second, we see no reason why such renegotiation must result in a higher rental price for

4    the buyer.   The United States adduces no evidence that rent under the existing lease is

5    significantly below market value.[13]   Accordingly, the United States has also not demonstrated

6    that the "bargaining range" would be so vast as to make future negotiations impracticable.[14]   See

7    id. at 278.  We, therefore, find that mandating the United States' adoption and registration of

8    Petitioner's lease is preferable to ordering restitution, which would require, at this late stage,

9    recalculation of the amounts payable to the claimants in the civil case and the claimants' consent

10   to a new settlement agreement (see Civil No. 06-1960, Docket No. 161).   Cf. id. at 276-78

11   (weighing benefits and costs of ordering damages against those of imposing injunction).

12          We note that a future owner of the commercial property will likely benefit from having

13   Petitioner as an existing anchor tenant—a guaranteed source of revenue and a presence that may

14   induce other businesses to take up tenancies nearby.  Petitioner's lease may also raise the value

_____

[13] Counsel for the United States inexplicably believes that a subsequent buyer would gain a better price in the course of renegotiation.  This argument is illogical.  Without evidence that the agreed rent is substantially below market value, it is improbable that a renegotiated rent would increase, rather than decrease to the detriment of the landlord, in a depressed economy.

       We repeatedly afforded the United States opportunities to avoid further litigation by simply recording the lease.  Having heard counsel's arguments, we are perturbed by the time and resources expended in these proceedings.  We warn counsel against unnecessarily prolonging litigation, which can work undue hardship upon innocent litigants before this court.

[14] However, the United States presents evidence that Petitioner has offset rental payments against costs incurred in constructing the commercial building situated on Finca No. 5500.  (Civil No. 06-1960, Docket No. 340-2.)  If true, this practice must cease, as there is no basis for this offset in the lease.  (See Civil No. 06-1960, Docket No. 333-2 at ¶ 6 ("Lessee may at its own cost construct any buildings . . . on the Premises . . . .").)

of Finca No. 5500 and, thus, increase the proceeds from a sale and the proceeds recouped by

the United States in forfeiture.  The actual value of Petitioner's supermarket is, of course,

difficult for us to assess in the abstract, but the equitable injunctive remedy conveniently avoids

this uncertainty by leaving the matter to the relevant private parties.  See id. at 278; see also

Ocean Spray Cranberries, Inc. v. Pepsico, Inc., 160 F.3d 58, 61 (1st Cir. 1998) (citing Walgreen

Co., 996 F.2d at 278, with approval).  In view of the economic reality in Puerto Rico and the

facts of this case, both public policy and equity favor our solution.

Accordingly, we reform our final order of forfeiture (Civil No. 06-1960, Docket No. 312;

Criminal No. 03-361, Docket No. 1139), to order the United States to take Finca No. 5500

subject to Petitioner's lease for the balance of the fifteen-year term, but without options for

extensions or surface rights in the improvement built upon the land (see Civil No. 06-1960,

Docket No. 333-2).[15]  We command the United States to record these terms with the Puerto Rico

Registrar of Property and to file a schedule listing the costs incurred in making this corrective

registration.  We also order Petitioner to reimburse the United States upon receiving said

schedule for the cost of this recordation.

---

[15] By preserving Petitioner as a tenant, our remedy respects the parties' intent under the ground lease. The contract resembles a security device under which Petitioner agreed to improve the land and retained rights in the building for the term of the lease to prevent unjust ouster.  (See Civil No. 06-1960, Docket No. 333-2.) It appears that Petitioner and Northland crafted this contract to overcome Petitioner's lack of rights in the land as a lessee under Puerto Rico law.  See Atocha Thom McAn, Inc. v. Registrar, 23 P.R. Offic. Trans. 497 (1989).

At the same time, because options for lease extensions are not recordable, id., we cannot give effect to the four options under the ground lease (Civil No. 06-1960, Docket No. 333-2) against the United States or subsequent purchasers of Finca No. 5500, see 31 L.P.R.A. § 4034.  While our decision reflects the intention of the lease as constrained by law, Petitioner would do well to avail itself of the property registry in the future.

C.      **Unripeness of CCBI's Challenge**

On May 12, 2010, CCBI moved for an order denying the claim of Petitioner to leasehold interests and mandating the United States' compliance with a settlement agreement dated December 3, 2009 (Civil No. 06-1960, Docket No. 309).  We find that CCBI's demand for the United States' compliance with the settlement agreement is premature.

Ripeness is a jurisdictional requirement under Article III of the U.S. Constitution that turns on the fitness of a case for resolution and the hardship imposed upon the parties if the court declines to hear the case.  Mangual v. Rotger-Sabat, 317 F.3d 45, 59 (1st Cir. 2003).  Timing is a key factor in the inquiry into fitness; adjudication is premature if the court must delve into abstract disputes over matters that may never arise.  Id.

CCBI argues that, pursuant to the settlement agreement, it has not yet surrendered its rights relating to Finca No. 5500.  (Civil No. 06-1960, Docket No. 348.)  CCBI adds that it purchased BSPR's judgment in this case, as well as associated security interests in said property.  (Civil No. 06-1960, Docket No. 348-2; see also Civil No. 06-1960, Docket Nos. 315; 317; 318.)

We refer CCBI to the settlement agreement in this case, under which the United States agreed to pay BSPR an amount equal to the unpaid principal due on Loan No. 7003949669 after the entry of the final order of forfeiture and sale of Finca No. 5500.[16]  (Civil No. 06-1960, Docket No. 309.)  Upon receiving such payment, BSPR agreed to "convey its security interest in the property to the United States" and relinquish all claims over the parcel.  (Id.)

---

[16] The original principal was denominated as $4,700,000. (Civil No. 06-1960, Docket No. 309.)

1    The United States' compliance with the settlement, <u>viz.</u>, its payment to CCBI, is

2    contingent upon the sale of the property in dispute.  The United States cannot sell the property

3    until we resolve the pending dispute between Petitioner and the United States.  (<u>See</u> Civil

4    No. 06-1960, Docket No. 346.)  CCBI is, therefore, unable to demonstrate the United States'

5    nonperformance at this juncture.  Furthermore, once the United States tenders payment, either

6    BSPR or CCBI must convey all remaining interests in Finca No. 5500 to the United States.  For

7    CCBI to assert its security interests in the property, either BSPR or CCBI must first default on

8    its reciprocal obligation under the settlement agreement.  It is simply too early to predict such

9    breach of contract.  Accordingly, we find that CCBI's petition is unripe for adjudication.

10                                                    **IV.**

11                                            **<u>Conclusion</u>**

12    For the reasons stated above, we hereby **GRANT** Petitioner's motion under 21 U.S.C.

13    § 853(n) (Civil No. 06-1960, Docket No. 319) and **DENY** CCBI's petition (Civil No. 06-1960,

14    Docket No. 348).  We **AMEND** our final order of forfeiture for Finca No. 5500 dated

15    December 15, 2009, in both the civil and criminal cases (Civil No. 06-1960, Docket No. 312;

16    Criminal No. 03-361, Docket No. 1139) to **ORDER** the United States to (1) record Petitioner's

17    ground lease with Northland (Civil No. 06-1960, Docket No. 333-2) under the terms described

18    above with the Registrar of Property in Arecibo; and (2) file an affidavit verifying the costs

19    incurred in this registration and designating the method and recipient of reimbursement by

Civil No. 06-1960 (JAF)/Criminal No. 03-361 (JAF)                    -25-

1    Petitioner.[17]  We further **ORDER** Petitioner to pay the United States in accordance with said

2    affidavit.

3            **IT IS SO ORDERED**.

4            San Juan, Puerto Rico, this 9th day of July, 2010.

5                                                    s/José Antonio Fusté
6                                                    JOSE ANTONIO FUSTE
7                                                    Chief U.S. District Judge

---

[17] We amend our judgment in the civil case pursuant to Federal Rule of Civil Procedure 60(b)(6).